CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUL 10 2008

JOHN F. CORCORAN, CLERK
BY: /s/ J. Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSE SANCHEZ-ANGELES, | ) |
| | ) Civil Action No. 7:07-cv-00596 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) By: Hon. James C. Turk |
| Defendant. | ) Senior United States District Judge |

Plaintiff Jose Sanchez-Angeles, a federal inmate proceeding pro se, has filed a complaint pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, with jurisdiction vested pursuant to 28 U.S.C. §§ 1331.[1] Sanchez-Angeles alleges that personnel at the United States Penitentiary in Beaumont, Texas ("USP Beaumont") and the United States Penitentiary, Lee County ("USP Lee") in Jonesville, Virginia, negligently failed to treat an ear infection, which ultimately resulted in complete hearing loss in his right ear. Defendant has submitted a motion to dismiss or, alternatively, a motion for summary judgment. The court notified plaintiff of defendant's motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and warned plaintiff that judgment might be granted for defendant if he did not respond to the motion by filing affidavits or other documents contradicting the defendant's evidence or otherwise explaining his claims. Sanchez-Angeles has now responded, thus making the underlying matter ripe for disposition. For

---

[1] Sanchez-Angeles filed this action on December 20, 2007, without stating clearly the type of action he wished to bring. On December 26, 2007, the court conditionally filed the complaint and ordered Sanchez-Angeles to amend his complaint to indicate whether he wished to proceed under the FTCA against the United States, under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), against individual federal officials who allegedly violated his constitutional rights, or both. Sanchez-Angeles filed a motion to amend on January 17, 2008; however, as the amended complaint failed to state any constitutional claim against either named defendant, Warden Terry O'Brien and the Bureau of Prisons ("BOP") medical department, the court dismissed all claims against them by memorandum opinion and order entered January 18, 2008. By the same memorandum opinion and order, the court construed the amended complaint as a civil action under the FTCA against the United States.

the reasons that follow, defendant's motion must be granted.[2]

I.

Sanchez-Angeles alleges that his "medical needs" were and currently are being "overlooked" and that, as a direct result, he has lost hearing in his right ear. (Compl. at 2.) Specifically, Sanchez-Angeles alleges that in August of 2005, while he was incarcerated in the special housing unit of USP Beaumont, "some form of debris entered and clogged [his] right ear canal." (Compl. at 2.) Sanchez-Angeles contends that his requests for medical attention were ignored for two weeks and that, accordingly, his ear became "increasingly infected." (Compl., Ex. A at 4.) Sanchez-Angeles contends that he was ultimately examined by a physician's assistant during which the physician's assistance "insert[ed] a long tube into [Sanchez-Angeles'] ear" and "pumped water through the tube into [his] ear." (Compl., Ex. A at 4.) Sanchez-Angeles contends that during this treatment, he "felt something 'pop' in [his] right ear." (Compl., Ex. A at 4.) Sanchez-Angeles contends that he has been unable to hear out of his right ear since that time.

On March 28, 2006, Sanchez Angeles was transferred to USP Lee. Upon his arrival at USP Lee, Sanchez-Angeles informed the medical staff of the condition of his ear. Sanchez-Angeles requested an appointment with an ear specialist; however, he contends that he had to wait six months for an appointment. He alleges that, during that six months, he "continued to experience infections, to include pus draining out of [his] ear, pain[,] and hearing loss." (Compl., Ex. A at 4.) Sanchez-Angeles alleges that he still continues to "experience pus drainage, complete loss of hearing in [his] right ear[,] and excrutiating pain." (Compl., Ex. A at 4.) He contends that, as of the date of the

---

[2] As defendant attaches a letter requesting expert certification, an acknowledgment of receipt document, and an affidavit and supporting medical records, and relies on these documents in its motion, the court will address the motion as one seeking summary judgment. Fed. R. Civ. P. 12(b) and 56.

2

filing of his complaint, he still has not received a follow-up visit with the ear specialist and that the medication provided to him during sick call only provides temporary relief from the infection and pain.

## II.

Defendant argues that Sanchez-Angeles' entire complaint should be dismissed with prejudice because of his failure to comply with the medical expert certification provision of the Virginia Medical Malpractice Act" ("VMMA"), Va. Code § 8.01-20.1. Defendant asserts that on April 23, 2008, a letter requesting a copy of the VMMA expert certification was hand-delivered to Sanchez-Angeles; however, Sanchez-Angeles has failed to provide defendant or the court with such a certification. Moreover, defendant argues that Sanchez-Angeles cannot establish negligence under applicable state laws because expert testimony is required to establish the standard of care and breach of that standard under both Virginia and Texas laws. Alternatively, defendant argues that summary judgment should be entered in favor of the United States because Sanchez-Angeles is unable to establish a breach of the standard of care for his medical treatment under either Texas or Virginia law. Defendant argues that medical records from both USP Beaumont and USP Lee indicate that Sanchez-Angeles has received continuous treatment for his chronic ear conditions.[3]

Sanchez-Angeles' medical records, as set forth in the declaration of Dr. David Allred, USP Lee Clinical Director, reveal that Sanchez-Angeles suffers from chronic-recurring Otitis Externa, chronic Otitis Media, and a Tympanic Membrane perforation, commonly referred to as a ruptured

---

[3] Defendant notes that, as Sanchez-Angeles filed his administrative tort claim on June 30, 2007, medical treatment prior to June 30, 2005, is outside the FTCA's two-year statute of limitations. See 28 U.S.C. § 2401(b). Accordingly, defendant properly limited its motion for summary judgment analysis to treatment prescribed from July 2005 to the present.

3

eardrum, involving a Methicillin-resistant Staphylococcus aureus ("MRSA") infection.[4] On July 17, 2005, while incarcerated at USP Beaumont, Sanchez-Angeles was treated for left ear pain and prescribed Keflex. On August 1, 2005, Sanchez-Angeles complained of continued left ear irritation but no pain. He was prescribed Bactrim at that time. On August 22, 2005, Sanchez-Angeles reported to medical staff requesting drops for his right ear. He was found to have toilet paper stuck in his right ear. No redness or drainage was observed and the toiled paper was removed. Sanchez-Angeles' eardrum was reportedly intact at that time. On August 23, 2005, Sanchez-Angeles' left ear was flushed with saline and Cortisporin ear drops were prescribed for the left ear. On August 30, 2005, Sanchez-Angeles was seen for an earache in his right ear. The exam discovered a tempanic membrane perforation in his right ear with active draining and a decrease in hearing. Ear drops were not prescribed for his right ear. On September 6, 2008, Sanchez-Angeles was examined and on September 8, 2005, he was prescribed Amoxicillin for his ear infection to take for ten days.

On October 7, 2005, Sanchez-Angeles reported not being able to hear out of his right ear. He denied any pain or drainage. A staff note indicates that Sanchez-Angeles could not be examined because "staff [were] unavailable to remove [the inmate] from [his] cell." On October 25, 2005, Sanchez-Angeles reported having difficulty hearing and right ear pain. A white crusting, but no fluid drainage, was noted in his right ear canal. On October 29, 2005, Sanchez-Angeles was examined and it was noted that he had right ear pain with discharge. He was prescribed Bactrim for the infection and Ibuprofen for pain.

On November 2, 2005, Sanchez-Angeles' right ear was evaluated and it was noted that his right ear felt better when it started to drain. He was continued on the prescribed antibiotic for

---

[4] MRSA is a bacteria that is resistant to many common antibiotics.

fourteen days. On November 8, 2005, a review of Sanchez-Angeles' hearing test revealed severe hearing loss in the right ear and moderate hearing loss in the left ear. On November 15, 2005, Sanchez-Angeles was treated for complaints of right ear pain that had started three days prior to his examination. He was again prescribed Cortisporin, this time for his right ear. On November 17, 2005, Sanchez-Angeles failed to appear for an appointment. On November 23, 2005, he was seen for chronic ear discomfort. Sanchez-Angeles' antibiotic was changed to Amoxicillin and he was instructed not to place anything in his ears, including Q-tips and tissue paper. On November 28, 2005, medical notes indicate that the ear drainage culture showed MRSA. One type of ear drop medication was discontinued, and a new topical medication was prescribed for the left ear. One oral antibiotic was discontinued, and another ordered. A third medication was ordered for pain control. On November 30, 2005, it was noted that there was no more drainage. A new medication was prescribed and Sanchez-Angeles was continued on Bactrim.

On December 14, 2005, Sanchez-Angeles was again evaluated. It was noted that his right ear was no longer draining and that he had completed his antibiotics. Sanchez-Angeles complained of muffled hearing and requested examination by a specialist. Sanchez-Angeles was scheduled for an audiogram. On January 3, 2006, Sanchez-Angeles was examined and referred to a specialist. It was noted that there was no drainage and that the perforation in his right ear was healing. On February 24, 2006, a consultation with a specialist was not completed because a Spanish interpreter was not available at that time. Before the consultation could be rescheduled, Sanchez-Angeles was transferred to USP Lee.

On March 28, 2006, Sanchez-Angeles arrived at USP Lee. On April 14, 2006, Sanchez-Angeles reported to medical staff that his hearing loss was due to his ear being flushed at USP

5

Beaumont which caused his eardrum to rupture. Sanchez-Angeles' hearing loss in his right ear was noted. On May 2, 2006, Sanchez-Angeles had a complete infectious disease Chronic Care Clinic[5] evaluation. He had no ear complaints at that time. On July 14, 2006, Sanchez-Angeles complained of a right earache with drainage and was prescribed medication. On November 14, 2006, he was again seen for complaints of an earache. There were no signs of an active infection at that time.

On December 18, 2006, Sanchez-Angeles was again examined subsequent to complaints of right ear pain. It was noted that there was minimal drainage, nothing was in the ear, and that the ear "must heal on its own." On January 9, 2007, Sanchez-Angeles was examined subsequent to complaints of an earache with drainage. He was started on the antibiotic Cipro and referred to an ENT specialist. On February 23, 2007, Sanchez-Angeles reported to Health Services complaining of drainage from his right ear. He also stated that he was using Q-tips to clean his ears again. Notes indicate that no medication was needed at that time and that an ENT specialist consultation was pending. On March 2, 2007, Sanchez-Angeles was examined by an ENT specialist. He was diagnosed with chronic central perforation and it was noted that he had large conductive hearing loss in his right ear. He was prescribed Cipro for fourteen days. The ENT specialist indicated that Sanchez-Angeles was not to let any water in his right ear and recommended repairing the right ear after the infection was resolved.

On April 13, 2007, Sanchez-Angeles reported to the Health Services Department. Apparently Sanchez-Angeles had not taken his medication as prescribed by the ENT specialist. Notes indicate that a translator was used to provide clear instructions for Sanchez-Angeles. On

---

[5] Chronic Care Clinic is a method used by the BOP to manage the health care of inmates with chronic health conditions on a regular basis. Inmates enrolled in the Chronic Care Clinic program are seen by staff physicians at least every three months in order to monitor the inmate's health conditions.

6

May 14, 2007, Sanchez-Angeles was examined and it was noted that his right ear did not exhibit any active drainage or infection. A consultation was scheduled with the ENT specialist. On May 23, 2007, Sanchez-Angeles returned with another ear infection and he was restarted on antibiotics. On July 11, 2007, Sanchez-Angeles had a follow-up appointment, during which he was advised of the surgical option of repairing his ear. Sanchez-Angeles requested time to consider the option.

On August 21, 2007, Sanchez-Angeles was examined and it was noted that he had recurring left ear drainage. He was prescribed Bactrim. On August 23, 2007, Sanchez-Angeles was again advised of the benefits of surgery for his right ear; however, he elected not to have the surgery. Rather, Sanchez-Angeles opted to receive periodic treatment for his chronic ear infections. On September 6, 2007, Sanchez-Angeles complained of right ear discharge. He had completed his medications one week earlier. He admitted to using Q-tips. He was again given antibiotics. On October 15, 2007, it was noted that Sanchez-Angeles was again suffering from an ear infection in his right ear. He again refused surgery and was prescribed Bactrim. On January 28, 2008, it was noted that Sanchez-Angeles was on Bactrim long-term and that his ear was draining some, with some pain. He again refused surgery. On February 4, 2008, Sanchez-Angeles was prescribed Gentamicin drops. On February 11, 2008, Sanchez-Angeles indicated that he would like to have the surgery. Clindamycin was ordered and an ENT appointment was scheduled.

Allred concludes that medical records from USP Beaumont and USP Lee indicate that Sanchez-Angeles received regular monitoring and continuous treatment for his chronic ear conditions. He notes that the ENT specialist did not recommend any treatment different than the treatment provided by BOP medical staff, other than the offer of surgery, which Sanchez-Angeles refused for eight months. Allred further notes that Sanchez-Angeles' medical records reveal that his

7

ear condition dates back to 2004; thus, any claim that "debris" in his ear in August 2005 caused his condition is incorrect. Allred finally contends that Sanchez-Angeles' failure to follow medical staff's direction not to insert objects into his ear contributed to the reoccurring of the ear infections, flushing a left ear cannot cause hearing loss in the right ear, and ear drops may not be appropriate for a ruptured eardrum due to the perforation.

## III.

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). The court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327. "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

## IV.

The FTCA creates a limited waiver of the "sovereign immunity of the United States so that the government may be liable in tort 'in the same manner and to the same extent as a private individual under like circumstances'" under the law of the state in which the conduct occurred.

8

Baum v. United States, 986 F.2d 716, 719 (4th Cir. 1993) (quoting 28 U.S.C. § 2674); see also 28 U.S.C. 1346(b)(1); Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006). In actions brought under the FTCA, federal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred. Myrick v. United States, 723 F.2d 1158, 1159 (4th Cir. 1983) (citations omitted). In the instant case, the substantive law of both Virginia and Texas applies because some of the alleged acts or omissions giving rise to the action occurred while Sanchez-Angeles was incarcerated in Texas and some occurred while Sanchez-Angeles was incarcerated in Virginia.

### A.

In Virginia, medical malpractice claims are governed by the VMMA which requires that, prior to serving the defendant, a party alleging medical malpractice must obtain an expert certification of merit indicating that the defendant deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed. See Va. Code § 8.01-20.1. The VMMA provides a limited exception to the certification requirement where expert certification is excused "if the plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." Va. Code § 8.01-20.1. There is some question as to whether the expert certification requirement, a Virginia procedural law, should be applied in this court to bar any medical malpractice claims stemming from Sanchez-Angeles' incarceration in Virginia. Compare Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996) (finding that, under the Erie R. Co. Tompkins, 304 U.S. 64 (1938) doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law); Straley v. United States,

887 F. Supp. 728, 734 (D.N.J. 1995) (applying Erie principles in a FTCA cause of action); Salsman v. United States, No. 03-CV-0140-MJR, 2005 WL 2001320, at *5 (S.D. Ill. Aug. 19, 2005) (noting that, in both diversity cases and FTCA cases, state substantive law is applied while federal procedural law is applied) with Parker v. United States, 475 F. Supp. 2d 594, 596 (E.D. Va. 2007) (Ellis, J.), aff'd 251 F. App'x 818 (4th Cir. 2007) (finding that inmate was statutorily required to provide expert certification of merit).[6]

It is clear that Texas precedent does not procedurally bar Sanchez-Angeles' claims. In Texas, medical malpractice plaintiffs must provide each defendant physician and health care provider with an expert report within 120 days after the date the original petition was filed. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2007). However, most Texas federal district courts have held that the expert report requirement of § 74.351 does not apply in federal court. See Castaneda v. Aetna Health Inc., Civil Action No. 1:07-CV-532 (TH/KFG), 2008 WL 1994936, at *2-4 (E.D. Tex. May 02, 2008). Accordingly, any medical malpractice claims stemming from Sanchez-Angeles' incarceration in Texas are not procedurally barred by his failure to provide defendant with an expert report within 120 days after the date the original petition was filed. Regardless, the court need not fully address whether Sanchez-Angeles' claims are procedurally barred because, as will be noted, Sanchez-Angeles cannot establish negligence under either Virginia or Texas state law, thus, his claims ultimately fail.

---

[6] The court notes that even if the VMMA expert certification requirement applies in this case, Virginia Code § 8.01-20.1 states that "[i]f the plaintiff did not obtain a necessary certifying expert opinion at the time the plaintiff requested service of process on a defendant as required under this section . . . the court *may* dismiss the case" (emphasis added). Thus, the option to dismiss the case is clearly left to the court's discretion.

10

**B.**

The court finds that Sanchez-Angeles fails to establish negligence under either Virginia or Texas law. In a medical malpractice action in both Virginia and Texas, "a plaintiff must establish not only that a defendant violated the applicable standard of care, and therefore was negligent, the plaintiff must also sustain the burden of showing that the negligent acts constituted a proximate cause of the injury or death." Bryan v. Burt, 486 S.E.2d 536, 539-40 (Va. 1997); Price v. Divita, 224 S.W.3d 331, 336 (Tex. App. 2006) (finding that the plaintiff in a medical malpractice action must prove four elements: (1) a physician's duty to comply with a specific standard of care; (2) a breach of the standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury); see also Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982). Moreover, "expert testimony is ordinarily necessary to establish the appropriate standard of care, to establish a deviation from the standard, and to establish that such a deviation was the proximate cause of the claimed damages." Raines v. Lutz, 341 S.E.2d 194, 196 (Va. 1986). Exceptions to this rule exist only in "those rare cases in which a health care provider's act or omission is clearly negligent within the common knowledge of laymen." Id. at 196, n. 2; see also Jackson v. Axelrad, 221 S.W.3d 650, 655 (Tex. 2007) (finding that in medical malpractice cases, the standard of care must be established by expert testimony unless the mode or form of treatment is a matter of common knowledge or is within the experience of a layman).

It is undisputed that, despite being given several opportunities to do so, Sanchez-Angeles has failed to present any expert testimony. Moreover, as previously noted, Sanchez-Angeles suffers from chronic-recurring Otitis Externa, chronic Otitis Media, and a Tympanic Membrane perforation involving a MRSA infection. Thus, in this situation, the standard of care, whether that standard of

11

care was violated, and whether the alleged violation was a proximate cause of the alleged injury, are not within the common knowledge exception. See Hannah v. United States, 523 F.3d 597, 601-02 (5th Cir. 2008) (under Texas law, prisoner was required to present expert testimony to establish the applicable standard of care with respect to the treatment of MRSA and to show how the care he received breached that standard, and his failure to designate or hire an expert to testify on his behalf entitled the United States to judgment as a matter of law). Accordingly, expert testimony is required in this instance. Because Sanchez-Angeles has failed to provide such testimony, his claims must be dismissed.[7, 8]

## V.

Based on the foregoing, the court will grant defendant's motion for summary judgment.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendant.

**ENTER**: This 10th of July, 2008.

*/s/ James C. Turk*
Senior United States District Judge

---

[7] The court notes that other circuits have found that a district court may exercise its discretion under Federal Rule of Evidence 706 to appoint an expert to an indigent party and to have the fees for that expert born entirely by one party. See, e.g., Ledford v. Sullivan, 105 F.3d 354, 361 (7th Cir. 1997); McKinney v. Anderson, 924 F.2d 1500, 1511 (9th Cir. 1991) vacated on other grounds sub nom. Helling v. McKinney, 502 U.S. 903 (1991); Webster v. Sowders, 846 F.2d 1032, 1038-39 (6th Cir. 1988); United States Marshals Serv. v. Means, 741 F.2d 1053, 1057-58 (8th Cir. 1984). However, a district court should appoint an expert to aid an indigent party only in "compelling circumstances." See Means, 741 F.2d at 1059. Sanchez-Angeles has not requested appointment of an expert pursuant to Federal Rule of Evidence 706 and this court finds no compelling circumstances requiring one.

[8] Regardless, medical records from both USP Beaumont and USP Lee indicate that Sanchez-Angeles has received substantial and continuous examinations and treatment for his chronic ear conditions. Thus, any allegation that Sanchez-Angeles has been ignored or neglected is clearly belied by the record. Moreover, based on the uncontradicted affidavit of Dr. Allred, the court is able to determine with sufficient certainty that the treatment administered to Sanchez-Angeles was appropriate.